**A OLYMPIC FORWARDER, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–579C.**

United States Court of Federal Claims.

June 12, 1995.

---

1. Those regulations may be found in *Buchan v.* *United States,* 31 Fed.Cl. at 497–98.

Alan F. Wohlstetter, Washington, DC, for plaintiff. Stanley I. Goldman and Denning & Wohlstetter, of counsel.

Agnes M. Brown, Dept. of Justice, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant. David M. Cohen, Director, and James M. Kinsella, Asst. Director, of counsel.

## OPINION

FUTEY, Judge.

Plaintiff in this action, and the plaintiffs in 23 related cases,[1] are freight forwarders who participate in the International Through Government Bill of Lading Personal Property Program (ITGBL Program). The Military Traffic Management Command (MTMC) administers the ITGBL Program. Defendant is the United States of America, acting through the Secretary of Defense. Plaintiff and defendant disagree on the procedure by which liability for damaged or missing baggage transported by plaintiff should be determined. Defendant moves for summary judgment and plaintiff has filed a cross motion for summary judgment. Both parties stipulate to the facts and agree that the question before the court should be resolved as a matter of law. For the reasons set forth below, defendant's motion is denied and plaintiff's cross motion is granted.

### Factual Background

Plaintiff, A Olympic Forwarder, Inc., transports servicemembers' items of personal property from origin to destination. The issue in this case involves only unaccompanied baggage shipments.[2] On all the claims in question, plaintiff packed and picked up the unaccompanied baggage. Items of personal property were wrapped in an individual carton, and these cartons or other items of personal property were packed into a larger container or containers depending on the size of the shipment. The larger containers are known as "shipping containers." At the time of pick up, plaintiff would customarily prepare an inventory of the items transported. Upon reaching the servicemember's destination, plaintiff unloaded the unaccompanied baggage, unpacked items (if requested), and placed them in the servicemember's quarters.

When delivery was complete, plaintiff gave the servicemember copies of the DD Form 1840 (Joint Statement of Loss or Damage at Delivery) to annotate items that were missing or damaged. The servicemember also had an additional 70 days to inspect the baggage and note any problems on the DD Form 1840OR (Notice of Loss or Damage). If the servicemember fulfilled the 70 day notice requirement, then he or she had up to two years from the date of delivery to file a claim against the military service (who in turn could recover from plaintiff for those losses) under the Military Personnel and Civilian Employees Claims Act, 31 U.S.C. § 3721. The claim was adjudicated by a claims examiner, who calculated the amount to be paid to the servicemember. The examiner also computed plaintiff's liability.

If the claims examiner determined that the unaccompanied baggage inventory was "properly" prepared, then plaintiff's liability was calculated using the Joint Military–Industry Table of Weights (JTOW)[3] (e.g., $.60 per pound times the weight of the item or carton as taken from the Table of Weights) and applied to each damaged or lost item. When the examiner determined that plaintiff "improperly" prepared the inventory, plaintiff's liability was calculated by multiplying the gross weight of the loaded external shipping container by $.60 per pound. The claims in dispute in this action arise from instances where liability was determined upon the gross weight of the external shipping container.

---

1. Civil Action Nos. 93–602C–93–613C, 93–789C–93–797C, 94–76C and 94–169C.

2. As defined by the solicitation, Unaccompanied Baggage is:
 > That portion of a member's prescribed weight allowance of personal property including professional books, papers, and equipment, which

is normally shipped separately from the bulk of personal property designated as such on the member's application for shipment.

3. This table was created to eliminate disputes over the weight of various major items or for standard size cartons based upon their contents.

## I. *Summary Judgment*

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS,* 998 F.2d 979 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

■ The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 98 L.Ed.2d 992 (1988); *Jay,* 998 F.2d at 982. If the moving party demonstrates an absence of genuine issues of material fact, then the burden shifts to the non-moving party to show that a genuine factual dispute does exist. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir. 1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

■ The court must resolve any doubts about factual issues in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); *Litton Indus. Products, Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all presumptions and inferences run. *Jay,* 998 F.2d at 982; *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

■ The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988).

Summary judgment will not necessarily be granted to one party or another just because both parties have moved for summary judgment. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). A cross-motion is a party's claim that it alone is entitled to summary judgment. It does not follow, however, that if one motion is rejected the other is necessarily supported. The court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Corman,* 26 Cl.Ct. at 1014.

## II. *Calculating liability for damaged or missing unaccompanied baggage*

Fundamentally, the court must determine whether or not defendant is entitled to compute plaintiff's liability for lost or damaged unaccompanied baggage based on the gross weight of the loaded external shipping container (which housed the lost or damaged item and possibly other items) multiplied by $.60 per pound.

In making its determination, the court reviewed several applicable documents: (1) the DOD Regulation 4500.34R (Personal Property Traffic Management Regulation); (2) the Tender of Service, Personal Property Household Goods and Unaccompanied Baggage (at Appendix A of DOD Reg 4500.34R); and, (3) the International Personal Property Rate Solicitation (solicitation).

The solicitation provides the most direct and clear intention of the contracting parties. The first portion of the solicitation which the court focuses upon is termed: "Limitation of Liability." That section states:

All rates in this solicitation apply on shipments when released to a value not exceeding 60 cents per pound per article including items of extraordinary value.... Carrier's legal liability for loss or damage to goods will be the same as set forth in the Interstate Commerce Act [Title 49,

USC, Section 20(11) ], limited to the amount per pound per article.[4]

This section confirms that plaintiff is only liable for ⅗ of the damage of a lost or stolen article. The critical question, therefore, is what is an article? The solicitation defines item (or article) in this fashion:

[t]he terms item and article used in this solicitation shall be interchangeable. Each shipping piece or package and the contents thereof shall constitute one item. Any item taken apart or knocked down for handling or loading shall constitute one item.

For purposes of determining plaintiff's liability, defendant includes the shipping container (the external tri-wall or bi-wall) in the definition of an article. Plaintiff, however, disagrees and points out that the solicitation defines Shipping Container *separately* from article/item. A Shipping Container is defined as an:

External container, crate, tri-wall, bi-wall or other government approved container into which individual articles and/or packing cartons are placed.

Independent of the definitions, the solicitation also furnishes examples on how liability should be assessed. The examples are provided as follows:[5]

1. Bed assembly, weight 100 pounds—headboard lost or damaged, weight 50 pounds. Carrier's maximum liability for loss or damage to the headboard would be 60 cents times 100 pounds or $60.00

2. Barrel of dishes, weight 50 pounds—several dishes broken weighing 2 pounds. Carrier's maximum liability for broken dishes within the barrel would be 60 cents times 50 pounds or $30.00

3. Carton or package, weight 60 pounds—fishing reel missing, weight 1 pound. Carrier's maximum liability would be 60 cents times 60 pounds or 36 dollars.

Not one of the examples supplied by the solicitation computes liability based on the gross weight of the shipping container. Instead, liability is based on the individual package or carton.

Finally, the solicitation, in an unambiguous and germane manner, states that:

On shipments transported *in* containers, *each* shipping piece or package or item not enclosed in packing unit within container, shall constitute one article. (emphasis added).

 Questions of contract interpretation are issues of law and may be disposed of on summary judgment. *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984). The court must construe the contract by its plain and unambiguous language. *National Rural Utilities Coop. Fin. Corp. v. United States,* 14 Cl.Ct. 130, 136 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir. 1989); *Ceccanti, Inc. v. United States,* 6 Cl. Ct. 526, 528 (1984). Compelled by the straight forward and obvious intention of the solicitation, the court must disagree with defendant's interpretation. By simply reading the definitions, it is apparent that the external container is not considered an article, but merely the object where one *or more* articles are placed. Since the limitation of liability set forth in the solicitation is $.60 per pound, *per article,* and an article is independent from the shipping container, the gross weight of the shipping container cannot be used to determine liability. There is no question of ambiguity. The solicitation overwhelmingly supports this conclusion.

Furthermore, the court's determination is not exclusively based upon the solicitation's definitions, but can also be supported by the specific examples provided in the solicitation. According to the cited examples, if a broken or missing dish belonged to a 50 pound crate of dishes, the total weight of the *crate* times $.60 would be used to calculate liability. Thus, the crate is the article, not the single dish. Similarly, if an individually wrapped 60 pound *carton* contained a 1 pound fishing reel that was damaged, the total weight of the carton, not the 1 pound reel, would be used to calculate liability. If, however, the

---

**4.** Title 49 U.S.C. § 20(11) has been repealed. It is replaced with 49 U.S.C. § 11707.

**5.** A crate or carton should not be confused with the shipping container. More than one crate/cartons could be placed in the shipping container.

50 pound crate of dishes and the 60 pound carton were placed together in a *Shipping Container* (external tri-wall), the combined weight of 110 pounds (plus the weight of the tri-wall) would not be used to calculate liability. Instead, as previously explained, only the specific article would be evaluated.

Depending on which brief the court reads, defendant might even agree with the court's determination thus far.[6] Defendant, however, maintains that in some instances, the claims examiner was entitled to use the gross weight of the shipping container if plaintiff skipped a line on the invoice or in some other way improperly filled out the inventory form. In those instances, defendant argues, the examiner justifiably assessed liability based on the gross weight of the external tri-wall container.

The solicitation makes no exception for "improper" invoices, nor does it warn carriers that their liability may be increased due to faulty invoices. The applicable regulations, DOD Regulation 4500.34 and the attached appendix A, also do not address what is an improper inventory or what results from improper inventorying.[7]

One might assume that an invoice was improper because it did not identify the article, thereby making it impossible for the examiner to determine the applicable weight. Plaintiff, however, dispels this assumption and *agrees* that, in those instances, the weight of the external shipping container could be used for determining liability.[8]

Plaintiff, maintains that its protests "were based on the fact that individual articles were identified in the inventories, except in the three instances where plaintiff ... agreed that the loaded weight of the external container was appropriate because the lost or damaged items were not sufficiently identified." [9]

As already stated within this opinion, the solicitation clearly dictates that liability is limited to $.60 per pound per article. The shipping container is not an article. Therefore, its gross weight cannot be used to determine liability. In addition, neither the solicitation nor the DOD regulation includes a provision allowing defendant to alter weight calculations due to "improper" inventorying.[10] Defendant had no particular method to determine which invoices were proper or improper. Instead, this decision was arbitrarily left up to each individual claims examiner to determine for him/herself. By using the gross weight of the shipping container, even when the article and its weight could be determined for purposes of calculating liability, defendant capriciously revised the terms of the solicitation. As long as articles are properly identified, liability must be determined based on the weight of the article rather than the gross weight of the shipping container. The government cannot rely on vague "irregularities" in the inventory invoice in order to vary the terms of the contract.

6. Initially, defendant's position in this litigation was that the external tri or bi-wall is an article. Defendant, however, adopts a new position in its reply brief. There defendant maintains that the solicitation does not set any preference for determining the weight of an article. Thus, defendant would be entitled to use any method it chooses, including the gross weight standard. The court is confident that this opinion addresses both of defendant's independent suppositions.

7. DOD Regulation 4500.34 Appendix A, # 54 paragraphs A–S, set forth instructions for inventory taking. This is a very specific and lengthy section. There is, however, no mention of "improper" inventorying or the ramifications of improperly filling out an inventory invoice.

8. Plaintiff's reply brief at 14.

9. *Id.*

10. The method for determining liability was also addressed by the Memorandum of Agreements between the Household Goods Forwarders of America Association (HHGFAA) (of which plaintiff is a member) and representatives of the military. Plaintiff correctly argues that the Memorandum of Agreements is irrelevant to contract interpretation and should not be considered probative because "extrinsic evidence to change the terms of a contract that is clear on its face" may not be considered by the court. *Ralph Larsen & Son v. U.S.*, 17 Cl.Ct. 39, 43 (1989) (*citing Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed.Cir.1988)). In any event, the agreement does not change the terms of the contract, but rather upholds them. The 1993 Memorandum of Agreement determined that the gross weight of the shipping container could not be used if the articles/items were identified. This coincides with the court's ruling.

## III. *Standard of Weight*

■ Once an article is identified, the possible ways for determining its weight could either be the JTOW, or the catalog or manufacturer's weight of the item. Plaintiff contends that in its complaint, it demanded recovery based on the manufacturer's or the catalog weight. However, in its opening brief, it voluntarily reduced its claims based on defendant's initial representation that there was an agreement that the JTOW would apply." [11] Indeed, defendant originally stated that "since the 1983 agreement with the Household Goods Forwarders Association, of which plaintiff is a member, the Joint Table of Weights has been used by the military claims services to calculate the carrier's liability on UAB [Unaccompanied Baggage] shipments for which a proper inventory was prepared." [12] Surprisingly, in its reply brief, defendant contends that "because the contract does not *require* the use of any *particular* method of determining the weight of an article, use of gross weight of the containers, rather than the weight of only the contents (net weight), the manufacturer's weight, or the weight listed on the JTOW, is permitted by the contract." [13]

The solicitation mandates that where an article can be identified, defendant cannot use the gross weight standard to assess liability. Thus, the net weight of the article/item must be used. Because both parties have, at least at one point, expressed a common practice of using the JTOW to determine an article's weight, the table should be referred to when calculating liability. When an article or item is not listed on the table, the manufacturer's or the catalog weight should be used as an alternative.

11. Plaintiff's reply brief p. 10 (*citing* Defendant's motion for summary judgment pp. 10, 12, 13).

12. Defendant's motion for summary judgment p. 10.

13. Defendant's reply brief p. 2.

14. Defendant's motion for summary judgment p. 15.

## IV. *Affirmative Defenses*

### A. *Waiver*

Defendant argues that even though this court holds that the language of the contract does not permit the use of gross weight to compute liability, defendant should still prevail based on a theory of waiver. Defendant states that plaintiff has intentionally relinquished its right, "either expressly or by conduct inconsistent with an intent," to seek judicial enforcement. [14]

Plaintiff counters that defendant has not identified any conduct or express indication to support this position. Plaintiff points to "hundreds of carrier protests" [15] that were submitted to the military claims service objecting to the determination of carrier liability on the basis of the loaded weight of the external carrier.

■ A waiver is an intentional relinquishment of a known right. *Solar Turbines, Inc. v. United States*, 23 Cl.Ct. 142, 153 (1991); *Cherokee Nation v. United States*, 174 Ct.Cl. 131, 355 F.2d 945 (1966). "[I]t is a well established rule of law that 'waivers of rights must be voluntary, knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Reliance Ins. Co. v. United States*, 20 Cl.Ct. 715, 723 (1990) (citations omitted). "Waiver requires (1) the existence at the time of the waiver a right, privilege, advantage or benefit that may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit." *Youngdale & Sons Constr. Co. v. United States*, 22 Cl.Ct. 345, 346 (1991).

■ Defendant did not present the court with any evidence that plaintiff knowingly and intentionally "waived" its right to seek judicial enforcement of the contract. [16] Plain-

15. Plaintiff's cross motion for summary judgment p. 32.

16. Defendant does state that "[i]f A Olympic did not expressly intend to relinquish its right to have liability calculated exclusively upon use of *the JTOW*, A Olympic's conduct in paying demands was clearly inconsistent with an intent to enforce that right." (emphasis added), Defendant's reply brief p. 24. Plaintiff, however, is not questioning the use of the JTOW to determine the weight of an article, but rather the calculation of

tiff did not voluntarily relinquish its rights; on the contrary, it continually protested defendant's use of the gross weight standard throughout the term of the contracts which are the subject of this litigation (1990–1993).[17] Therefore, defendant cannot prevail on a theory of waiver.

### B. *Estoppel*

Defendant also argues that the theory of estoppel compels a decision in its favor. Defendant states that unlike waiver, "estoppel focuses not upon plaintiff's intent, but rather upon the effects of plaintiff's conduct upon defendant."[18] Defendant claims that it was misled by plaintiff, who in the past ten years of contracting with the government, never contested defendant's practice. Additionally, defendant argues that plaintiff always had the right to refuse payment and contest any offset to the General Accounting Office (GAO), but did not do so.

Plaintiff counters that defendant is only reiterating its argument for waiver, i.e., that plaintiff failed to assert its interpretation of the solicitation. Further, plaintiff argues that it did not appeal to the GAO because these appeals are time consuming and burdensome. Moreover, GAO appeals require cooperation from the military claims service that often times was unwilling to respond.

■ Equitable estoppel may prohibit a party from raising a defense or objection otherwise permitted, or from bringing an action to court which it could pursue in usual circumstances. See *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981); *Biagioli v. United States*, 2 Cl.Ct. 304, 307 (1983). Equitable estoppel is applicable, however, only if four requirements are met: (1) the party to be estopped must know the facts; (2) the party to be estopped must have believed that his conduct would be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the

true facts; and (4) it must rely on the former's conduct to his injury. *Pacific Gas & Elec. v. United States*, 3 Cl.Ct. 329, 340 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984).

■ The record does not support defendant's claim that plaintiff failed to assert its interpretation of the solicitation and acquiesced to the government's interpretation until it filed this action. Numerous facts indicate that plaintiff took steps to emphasize interpretation. For instance, as a member of the Household Goods Forwarders of America Association (HHGFAA), the agreements executed between the association and the military demonstrate plaintiff's dissatisfaction with defendant's actions. The 1993 Memorandum of Understanding discussed and attempted to resolve the liability issue. All of plaintiff's claims, however, are not covered by that agreement. As a result, plaintiff appeals to this court to resolve them.

Furthermore, defendant's argument that plaintiff did not appeal to GAO and, therefore, should be estopped, is without merit. Plaintiff was under no obligation to appeal to the GAO, and instead chose to appeal to this court. Accordingly, defendant's affirmative defense for equitable estoppel must also fail.

### C. *Laches*

Defendant also argues that the theory of laches compels a decision in its favor. Plaintiff has been contracting with the government since 1983. Defendant claims that it has been using the gross weight method since that time. Therefore, defendant argues that plaintiff waited an unreasonably long time to file its complaint.

Plaintiff disagrees that it has inexcusably or unreasonably delayed in bringing this action. Specifically, plaintiff maintains that defendant's use of the gross shipping weight method severely increased beginning in 1990. Plaintiff argues that since then it has protest-

liability based on the gross weight of the external carrier.

**17.** Defendant clearly had notice that plaintiff objected to the use of the gross weight method. Hundreds of protests were submitted to the military claims service opposing this practice. Plain-

tiff, alone, was responsible for over 470 protests. *See,* Plaintiff's motion for summary judgment pp. 28–29.

**18.** Defendant's motion for summary judgment p. 15.

ed individually and through the HHGFAA seeking to obtain administrative relief.

■ The doctrine of laches is a " 'fairness doctrine' by which relief is denied to one who has unreasonably and inexcusably delayed in the assertion of a claim." *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 5 (Fed.Cir.1985) *(citing Brundage v. United States*, 205 Ct.Cl. 502, 504 F.2d 1382 (1974)). Accordingly, to apply the doctrine of laches, defendant must first establish unreasonable and unexcused delay. *Farmers Grain Co. v. United States*, 29 Fed.Cl. 684, 687 (1993); *S.E.R., Jobs for Progress*, 759 F.2d at 5.

■ As already expressed in this opinion, the court is satisfied that plaintiff has taken action to protest the use of gross shipping weight valuation. As plaintiff iterates in its motion, the instant action involves claims from 1990 to 1993, not claims from ten years ago. Furthermore, these actions were filed after execution of the 1993 Memorandum of Agreement. Defendant refused to include the claims presently before this court in that agreement. The record shows that plaintiff attempted to resolve this issue administratively. When those efforts failed, plaintiff filed the instant claims with this court. In *Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed.Cir.1988), the Court of Appeals for the Federal Circuit clearly stated:

> We reject the notion that the government can rely on a presumption of prejudice, or shift the burden to plaintiff to show lack of prejudice if delay is long, to support the affirmative defense of laches. [Citations omitted.]

The mere fact that the parties had been contracting for ten years is insufficient to establish prejudice.

Prejudice may also be established by evidence of "loss of records, destruction of evidence, fading memories, or unavailability of witnesses." *Cornetta*, 851 F.2d at 1378. To support its claim of prejudice, defendant points to the Air Force regulations that require destruction of its files within one year of settlement. Defendant states that any evidence of plaintiff's acceptance of this practice *may have been* destroyed. Additionally, defendant claims that memories of workers who could testify as to the use of the gross weight method are clouded.

■ The contention that files may have been destroyed is too speculative to support a theory of laches. *Farmers Grain*, 29 Fed. Cl. at 687. Further, defendant's position that memories are clouded is unreasonable. Defendant claims that the use of the gross weight method has been *consistently* used since 1983 up to the present time. Therefore, workers should, at the very least, be able to account for the practice which occurred between 1990–1993, the applicable time period of the instant litigation. Moreover, the court has already rejected, as a matter of law, the use of the gross weight method unless the article is unidentifiable. The general rule is that where a contract is not ambiguous, parol evidence may not be used to vary the terms of the agreement. *Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed.Cir.1988); *Bistline v. United States*, 1274, 226 Ct.Cl. 282, 286–87, 640 F.2d 1270 (1981); *Perry & Wallis, Inc. v. United States*, 192 Ct.Cl. 310, 315, 427 F.2d 722 (1970). Thus, workers' memories of an oral agreement to use the gross weight method are immaterial. Defendant has failed to show that it is unmistakably prejudiced by plaintiff's delay (or lack thereof) in bringing this action, and it cannot prevail on the doctrine of laches.

### D. *Accord and Satisfaction*

Defendant argues that plaintiff's payments and defendant's acceptance of payments constitute a valid accord and satisfaction. Defendant states that plaintiff willingly paid defendant and included letters indicating that plaintiff was "pleased to enclose a check in full and final settlement of defendant's demands." Further, defendant states that no reservations were included with these payments.

Plaintiff argues that there is no accord and satisfaction because defendant has not proven the essential elements to assert this affirmative defense. Primarily, plaintiff contends that the payments were not made as a result of an agreement to settle a disputed claim in return for substituted performance.

Under traditional contract principles, accord and satisfaction denotes a " 'discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction' " of the claim. *Emerson–Sack–Warner Corp. v. United States*, 189 Ct.Cl. 264, 277, 416 F.2d 1335, 1343 (1969) (*quoting Brock & Blevins Co. v. United States*, 170 Ct.Cl. 52, 58–59, 343 F.2d 951, 955 (1965)).

■ There are three elements that must be present in order for there to be an effective accord and satisfaction: (1) a bona fide disputed claim between the Government and the contractor; (2) an agreement to settle the disputed claim in return for substituted performance; and, (3) an acceptance of the substituted performance in full satisfaction of the disputed claim. *United Int'l Investigative Servs. v. United States*, 33 Fed.Cl. 363 (1995).

■ As plaintiff correctly points out, defendant has not identified any settlement for an amount that is less than what was claimed to be due. Defendant made a demand upon plaintiff which was paid. Plaintiff asserts that it made these payments to avoid offsets that would unavoidably occur and to avoid being disqualified from participation in defendant's Personal Property Program for failure to pay claims. Essentially, plaintiff made the payment in order to avoid being "terminated for default" from the contract. According to the contract specifications, plaintiff was obliged to pay defendant for damaged or lost baggage claims. Thus, payment was a part of performance. *See North Star Alaska Hous. v. United States*, 30 Fed. Cl. 259, 285 (1993) (ongoing duty of contractor to perform); *see also Atterton Painting & Constr., Inc.*, ASBCA 31471, 88–1 B.C.A. (CCH) 20478 (1987) (holding that proper action for contractor was to continue to perform and seek reimbursement through an equitable adjustment rather than abandoning work). Just as any other party that contracts with the government, plaintiff had an on-going duty to continue performance and seek reimbursement through the proper channels. The payments made by plaintiff did not serve as a settlement for substituted performance. Instead plaintiff rendered payment in accordance with the requirements of the contract. Therefore, defendant cannot prove the essential elements of the accord and satisfaction defense.

*Conclusion*

As a matter of law, defendant may not use the gross weight valuation when calculating plaintiff's liability for lost or damaged unaccompanied baggage, unless the article or item is not identifiable. Instead, defendant must follow the examples set forth in the solicitation and calculate liability based on individual articles and items. The weight of articles and items will be determined by the JTOW. In the event that there is no listing, defendant will use the manufacturer's or catalog weight. For the reasons set forth above, defendant's affirmative defenses of waiver, estoppel, laches, and accord and satisfaction fail. Plaintiff's cross-motion for summary judgment is granted. Defendant's motion for summary judgment is denied. No costs.