INFORMATION SYSTEMS &
NETWORKS CORPORA-
TION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–663C.

United States Court of Federal Claims.

Nov. 30, 2000.

Norman H. Singer, Bethesda, Maryland, attorney of record for plaintiff. A. Daniel Ullman II, of counsel.

Erin E. Powell, Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for defendant. David M. Cohen, Director, and Mark A. Melnick, Assistant Director.

## *OPINION*

FUTEY, Judge.

This case is before the court on the parties' cross-motions for summary judgment. Plaintiff Information Systems & Networks Corporation appeals from the final decision of the Contracting Officer (CO) denying plaintiff's claims for reimbursement of state income taxes paid on income derived from government cost-reimbursement and time-and-materials contracts. Plaintiff asks for a declaratory judgment from this court stating that (1) payment of state income taxes by its sole shareholder on behalf of plaintiff, a Subchapter S corporation, is a reimbursable, allowable cost under the Federal Acquisition Regulations (FAR); and (2) such payment should be allowed to be included in plaintiff's indirect rate cost pool for the contracts performed by plaintiff for the United States government (defendant). Plaintiff also asks for attorney fees and costs. Plaintiff argues that the pertinent provisions of the FAR regarding allowability of costs, and specifically of taxes paid, apply in favor of plaintiff and its sole shareholder because (1) the FAR provisions were intended to include such tax reimbursement; and (2) an agreement be-

tween plaintiff and its sole shareholder obligated plaintiff to reimburse the sole shareholder for the taxes (Agreement), therefore creating a valid and reasonable cost to plaintiff that is reimbursable under the FAR. Defendant contends that because plaintiff is an S corporation, its income tax liability is "passed through" to the sole shareholder, and therefore plaintiff did not have to pay, nor did it pay, state income taxes as a result of the contracts at issue. Defendant argues instead that the tax liability belonged exclusively to the sole shareholder, and as such is personal liability that is not reimbursable under the FAR.

### Factual Background

Plaintiff is a corporation organized under Subchapter S of the Internal Revenue Code (IRC), 26 U.S.C. §§ 1361–1379 (1994 & Supp. V 1999). "S corporations," as they are known, are small businesses, closely held by no more than 75 shareholders, 26 U.S.C. § 1361(b)(1)(A), and often held by a sole shareholder. S corporation status is a tax election designed to make the decision of small businesses to incorporate "tax neutral;" i.e., a business will incur the same tax liability on its income whether the owners of the business incorporate or not. Subchapter S accomplishes this by eliminating the "double taxation" that usually befalls normal corporate income. *See* 26 U.S.C. § 1363. With an ordinary corporation, or "C corporation," the corporate entity must pay income taxes on its income. Then, when the corporation distributes after-tax income to its shareholders, those shareholders must pay personal income tax on that source of income. In the case of an S corporation, no income tax liability accrues to the corporation. Instead, the corporation's income is "passed through" to the shareholders, and is attributed to the shareholders' personal income tax liability in pro rata amounts. 26 U.S.C. § 1366. States have the option of recognizing the federal S corporation designation by aligning their tax codes with the IRC to allow the transfer of income tax liability of the corporation to the personal tax liability of the shareholders.

Most states have adopted the same treatment of S corporations as the federal government. The state income taxes for which plaintiff has asked reimbursement from the government all were imposed in states that have adopted the S corporation tax treatment found in the IRC.[1]

Plaintiff has a sole shareholder, Roma Malkani, and therefore the entire income tax liability of plaintiff is passed through to her personal income tax liability. Plaintiff alleges that it and Ms. Malkani, however, entered into the Agreement, referenced above. In accordance with the Agreement, Ms. Malkani has indeed paid the state income taxes incurred by plaintiff on her own income tax returns, but pursuant to a regular course of practice has been reimbursed by plaintiff for the payment of those taxes. Defendant claims that plaintiff has not satisfactorily proven the existence of the Agreement, as it is mentioned only in an affidavit and a deposition, and plaintiff has provided no written memorialization of the Agreement. Defendant does not dispute, however, that Ms. Malkani paid the taxes at issue, and that plaintiff reimbursed her for such tax payment.

Plaintiff and defendant entered into several cost-reimbursement and time-and-materials contracts in the 1980's and early 1990's. These types of contracts provide a cost ceiling for the work performed on a contract and permit the government to pay up to that ceiling amount for allowable incurred costs of the contractor for the contract work. 48 C.F.R. § 16.301–1 (2000). This arrangement is made for contracts for which the contract price is not readily ascertainable at the time of contracting. *Id.* During performance of one of these contracts the contractor incurs direct (e.g., materials, labor, equipment costs) and indirect (e.g., taxes, rental space, insurance) costs. Both direct and indirect costs are generally allowable for reimbursement. 48 C.F.R. § 31.201–1(a) (2000). After performance, a contractor requests reimbursement for indirect costs via an "indirect rate proposal," which relates back to the

---

1. These states are Maryland, Ohio, Indiana, Georgia, Virginia, Rhode Island, North Carolina and South Carolina.

agreed-upon rates for allowable costs for that certain type of contract. This proposal requests that the various claimed costs be included in the "rate pool."[2] The government then determines what costs are allowable, determines the proper contents of the rate pool, adjusts the rate of reimbursement accordingly, and pays the contractor for its allowable costs.

Plaintiff submitted final indirect rate proposals for fiscal years (FY) 1985–91. It claimed reimbursable expenses for state income taxes paid in each of those proposals within its "general and administrative expense rate pool." Plaintiff relied on information from outside sources that other S corporations had been reimbursed for state income taxes in this manner.[3] In each case, excepting FY 1990, the Defense Contract Audit Agency (DCAA), which processed the proposals, denied plaintiff's claims for state income taxes, explaining that the taxes paid were unallowable.[4] DCAA based its decision on the fact that plaintiff was an S corporation, and therefore was not subject to state income tax:

> [T]he contractor is a Sub–Chapter S Corporation. As such, with few exceptions, the corporation is not taxed by the states on its income; rather the income flows to the stockholders who pay tax on their personal income tax returns. Thus, this is a personal tax expense to the shareholders. The state income taxes of individuals are not allocable to the company, as described in [48 C.F.R. §] 31.201–4, Determining al-

locability, and therefore, are not part of the contract costs directly or indirectly.[5]

Despite continuing correspondence between the parties, plaintiff and defendant reached an impasse concerning the reimbursement of the state income taxes. After the DCAA disallowances of tax costs, plaintiff twice requested a final decision from the CO concerning its indirect rate proposals for reimbursement of taxes.[6] On April 16, 1998, the CO issued a final decision denying plaintiff's claims for FY 1985 and 1986, and demanded repayment of previous reimbursement to plaintiff that it deemed as unallowable costs.[7] On August 18, 1998, plaintiff filed suit in this court, asking the court to declare the taxes paid by Ms. Malkani, and subsequently reimbursed by plaintiff, to be allowable under the pertinent provisions of the FAR. Defendant counterclaimed, asking for the return of its previous improper reimbursement of a portion of plaintiff's incurred state income taxes. The parties proceeded to file motions for summary judgment in this matter.

### Discussion

■ Plaintiff asks for declaratory judgment in this case. As a general rule, this court does not have jurisdiction over such claims, and does not have the authority to issue declaratory judgments. *See* 28 U.S.C. § 2201 (1994) (stating only a "court of the United States" can issue declaratory judgments); 28 U.S.C. § 451 (1994) (excluding the Court of Federal Claims from the defini-

---

2. Claims for state income taxes are included within a contractor's proposed "general and administrative expense rate pool."

3. Ms. Malkani, in her capacity as plaintiff's president, explained in a letter to the CO that DCAA had previously allowed state income taxes paid by S corporation shareholders as costs. Ms. Malkani stated that DCAA had allowed as costs the state income taxes of Executive Resource Associates, Inc., another S corporation. Plaintiff's/Counterclaim Defendant Information Systems & Networks Corporation's Motion for Summary Judgment, Appendix, Exhibit 8, Letter of May 2, 1996 from Ms. Malkani to the CO.

4. Plaintiff claimed only $404 in FY 1990 for reimbursement of state income taxes, and therefore DCAA considered it an insignificant amount and allowed the claim. DCAA disallowed the tax costs for FY 1985 and 1986 on November 1,

1994, and disallowed the tax costs for FY 1987–89 and 1991 on May 23, 1995.

5. Defendant's Cross–Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, Appendix, Exhibit 3, DCAA Audit Report of Nov. 1, 1994.

6. Plaintiff requested reimbursement in the amount of $294,052 in the second request for final decision, and certified the claim under 48 C.F.R. § 52.233–1 (2000), as the claim amounted to more than $100,000.

7. The CO directed plaintiff to pay $262,515, with $17,274 of the total representing unallowable state income tax reimbursement for FY 1985 and 1986.

tion of "court of the United States"). In 1992, however, this court's jurisdiction was enlarged by amendment of the Tucker Act, the court's jurisdictional foundation. The Tucker Act, 28 U.S.C. § 1491(a)(2) (1994), now states that the court has jurisdiction to render judgment on nonmonetary claims brought in this court under section 10(a)(1) of the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 609(a)(1) (1994), based on denials of contractor claims to CO's under section 6 of the CDA, 41 U.S.C. § 605 (1994 & Supp. III 1997). A complaint for declaratory judgment appealing a denial of claims by a CO's final decision falls within the court's jurisdiction over "nonmonetary claims." *Emery Worldwide Airlines, Inc. v. United States,* 47 Fed. Cl. 461, 468 (2000); *see Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1268 (Fed.Cir.1999).

In this case, plaintiff appeals a final decision by the CO under section 6(a) of the CDA denying reimbursement for the taxes paid in FY 1985 and 1986, and appeals a deemed denial (due to the CO's failure to issue a final decision within 60 days) of its claims for taxes paid FY 1987–91 under section 6(b)(5) of the CDA. It has brought its claims in this court under section 10(a)(1) of the CDA. This court has jurisdiction, therefore, over plaintiff's claims for declaratory judgment.

## I. *Summary Judgment*

The parties have filed cross-motions for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *cited in Jay v. Secretary, DHHS,* 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d

1387, 1390 (Fed.Cir.1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). It does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992)).

FAR Part 31, Contract Cost Principles and Procedures, Subpart 31.2, Contracts With Commercial Organizations, establishes a set of principles and provisions for the reimbursement of costs for contractors performing the type of contract at issue in this case. The section named "Determining allowability" states that costs generally must meet two criteria in order to be an allowable expense: first, the cost must be reasonable, and second, it must be allocable. 48 C.F.R. § 31.201–2(a)(1), (2) (2000). The "Determining reasonableness" provision states that a cost is reasonable when it is incurred in accord with sound, generally accepted business principles, and that a prudent person engaged in a competitive business would expect to incur such cost ordinarily and necessarily when completing contract work for the government. 48 C.F.R. § 31.201–3 (2000). In the "Determining allocability" section, the FAR provides that the amount claimed must be chargeable generally to a cost objective of the contractual relationship between the contractor and the government in order to be allocable and therefore reimbursable. 48 C.F.R. § 31.201–4(a), (b) (2000). Subsection (c) of the provision states, however, that expenses which are not directly attributable to contract work, but nonetheless are necessary for the overall operation of the contractor's business, are allocable. § 31.201–4(c). The government will make payments for reimbursement costs only when a claimant shows that such costs are allowable. 48 C.F.R. § 52.216–7 (2000).

In addition, specifically provided in the FAR provisions regarding reimbursement is the section entitled "Taxes," which provides the basis for the reimbursement of certain

tax expenditures of contractors performing cost-reimbursement contracts for the government. 48 C.F.R. § 31.205–41 (2000) (Taxes Provision). The section states that certain federal, state and local taxes are allowable if they "are required to be and are paid or accrued in accordance with generally accepted accounting principles." § 31.205–41(a)(1). State income taxes in general are allowable costs under the section. *See* § 31.205–41(a), (a)(1), (b). If the contractor is exempt from a certain tax liability, however, and still proceeds to pay such tax, that tax expenditure is not allowable. § 31.205–41(b)(3).

Plaintiff argues first that the Taxes Provision intends to compensate for taxes paid by all types of "commercial organizations," including S corporations, because Subpart 31.2 applies to all such organizations, and nothing in any of the reimbursement sections states that certain organizations would be treated differently from others. Second, plaintiff maintains that it is required by state law to ensure the timely and appropriate payment of taxes required of Ms. Malkani due to plaintiff's business activities and corporate income, otherwise its corporate charter could be forfeited. Plaintiff avers that it executed the Agreement with Ms. Malkani under which plaintiff paid Ms. Malkani for her personal income taxes incurred on plaintiff's corporate income.[8] Plaintiff therefore asserts that (1) the tax itself had to be paid by Ms. Malkani; (2) plaintiff was required to pay for the expense equal to the additional tax burden of Ms. Malkani; and (3) the expenditure incurred pursuant to the Agreement is reasonable and allocable, because it was necessary to maintain its charter and therefore its ability to continue performing work on its contracts with the government.

Defendant responds simply that the state law applicable to this case places the ultimate responsibility to pay the pass-through income taxes on plaintiff's corporate income squarely on Ms. Malkani; it concludes, therefore, that an S corporation has no responsibility to pay state income taxes or ensure such payment. According to defendant, because plaintiff did not have to pay state income taxes, plaintiff's claims for reimbursement are not allowable under the Taxes Provision, nor is such payment reasonable or allocable under the general provisions regulating reimbursement.

■ The court must first determine if the Taxes Provision was meant to allow reimbursement of state income taxes paid as a result of plaintiff's performance of government contracts, even if plaintiff itself was not technically required to pay the taxes. There is little in the way of guidance on this question.[9] When the court undertakes interpretation of a federal regulation, it will rely first on its plain language. *PCA Health Plans of Texas v. LaChance*, 191 F.3d 1353, 1355 (Fed.Cir.1999). Also, the court will accord some deference to the construal of the regulation by an agency's board of appeals, when such board possesses particular expertise in determining the meaning of the regulation. *Titan Corp. v. West*, 129 F.3d 1479, 1481 (Fed.Cir.1997).[9]

■ The language of the Taxes Provision states that when a contractor pays taxes from which it is exempt, the contractor will not qualify for reimbursement for the tax payment:

Although none has dealt specifically with the issue of whether state income taxes are allowable for S corporations, the General Services Board of Contract Appeals (GSBCA) has heard claims for such reimbursement. At no time in the resolution of those claims has the GSBCA made any reference to a blanket prohibition on the allowability of state income taxes for S corporations due to the pass-through nature of their tax liability, and has instead treated S corporations in no special manner on claims for reimbursement of such taxes. *See, e.g., Singleton Contracting Corp.*, 90–3 BCA (CCH) ¶ 23,125, GSBCA No. 9614 (June 1, 1990).

8. Although defendant questions whether the Agreement actually exists, the fact that this Agreement was never executed would not change the court's analysis. The operative fact is not whether plaintiff agreed to reimburse Ms. Malkani for the payment of the pass-through corporate income taxes, but is instead whether plaintiff actually did reimburse Ms. Malkani for those tax payments. It is not disputed that Ms. Malkani paid the state income taxes at issue in this case, nor that plaintiff reimbursed Ms. Malkani for these payments.

9. Unfortunately, few board of appeal decisions have attempted to interpret the Taxes Provision.

(b) The following types of costs are not allowable:

. . . .

(3) Taxes from which exemptions are available to the contractor directly . . . . The term *exemption* means freedom from taxation in whole or in part and includes a tax abatement or reduction resulting from mode of assessment, method of calculation, or otherwise.

48 C.F.R. § 31.205–41(b), (b)(3). Although technically plaintiff is "exempt" from paying state income taxes due to its S corporation status, this is not a tax exemption in the normal sense of the term. Usually when an entity or individual is exempt from taxation, the result is the complete absence of payment of that tax, either by the exempted party or any other party. This absence of payment requirement is embodied in the term "abatement" included in the exemption definition in the Taxes Provision. § 31.205–41(b)(3).[10] In plaintiff's situation, however, the exemption is not an abatement of tax liability, but a transfer of liability. Plaintiff, as an S corporation, is not relieved of state tax liability, but is simply required to pass its liability on its corporate income to Ms. Malkani. The Taxes Provision's language does not require that any specific part of a corpo-

ration pay the state income taxes: "The following types of costs are allowable: . . . State . . . taxes . . . that are required to be and are paid. . . ." § 31.205–41(a), (a)(1). Because the state income taxes were required to be paid and were paid, and because the tax liability on the corporate income was not subject to abatement or reduction, the state income taxes claimed by plaintiff for reimbursement are allowed under the Taxes Provision.[11]

This interpretation of the Taxes Provision comports with the general intent of the FAR and the IRC. Nothing in the FAR provisions involved in this case points to an intent that certain types of commercial organizations should be denied reimbursement altogether simply because of their tax election or corporate structure. Nor does the purpose behind Subchapter S of the IRC include any desire that the structure of pass-through taxation would cause a corporation to lose out on reimbursement due to its tax election. Neither the FAR nor Subchapter S state that an S corporation is only allowed one type of tax relief, either pass-through taxation or cost-reimbursement. Indeed, S corporations are small businesses and their corporate structure is meant to help, not hinder, the growth and health of these businesses. It is the general intent of the FAR to aid and encourage small businesses as well.[12]

**10.** Abatement, as applied to the payment of taxes, is thus defined: "Diminution or decrease in the amount of tax imposed. Abatement of taxes relieves property of its share of the burdens of taxation after the assessment has been made and the tax levied." BLACK'S LAW DICTIONARY 4 (5th ed.1979). In this case, the property involved, plaintiff's corporate income, has not been relieved of its tax burden. Instead, the property is taxed through Ms. Malkani's personal tax liability instead of plaintiff's corporate tax liability.

**11.** Indeed, the restriction in the Taxes Provision, precluding allowance of taxes when the contractor is exempt from such tax, § 31.205–41(b)(3), is most likely primarily designed to preclude a contractor's double recovery of taxes. A contractor that unnecessarily pays taxes to a state will undoubtedly be able to recover those payments in refunds from the state. The reimbursement of such erroneous payments as contract costs as well would unjustly enrich a contractor, therefore, as the contractor could recover the same amount from the government, as costs, and from the state tax authority, as refunds. The Taxes Provision merely cuts off the chance for such double recovery. Subsection (b)(3) of the Taxes

Provision is complemented by subsection (d), which states that any taxes later refunded to a contractor from the taxing entity will be returned to the government when the government had previously reimbursed such taxes as allowable costs. In this case, however, no refund is available from the state tax authority. The taxes were not erroneously or mistakenly paid, but in fact were required to be paid. No double recovery is available here, and therefore the taxes are allowable costs under the Taxes Provision.

**12.** As another policy issue, a finding by this court that the Taxes Provision precludes allowability of state income taxes paid by shareholders of S corporations would most likely harm the financial interests of the federal government in the future. Government contractors that elect S corporation status pay taxes on corporate income at a lower rate than normal C corporations. If the Taxes Provision does not allow reimbursement for state income taxes for S corporations, such corporations will most likely change their tax election to C corporation status in order to benefit from the cost reimbursement available from the Taxes Provision. This change in election

In addition, to interpret the provision in this way does not frustrate the purpose of reimbursement. There is no question that the taxes have been paid, nor that the reimbursement sought by plaintiff is meant precisely to cover that payment. Also, the government will completely discharge its duty to reimburse when it pays the costs of these taxes, even though the money will go directly to plaintiff, and not Ms. Malkani. This reimbursement is especially justified when, as in this case, an S corporation has first reimbursed its shareholder for the payment of taxes. In addition, it seems that other S corporations have been reimbursed in exactly the same way as plaintiff is asking here. Ms. Malkani paid the income taxes incurred by plaintiff. Plaintiff recompensed Ms. Malkani for such payment. Pursuant to the Taxes Provision, therefore, defendant is obligated to reimburse plaintiff for this transferred pass-through tax expenditure.[13]

Defendant nevertheless relies upon the obvious general proposition that because only the shareholders of an S corporation are required to pay taxes on corporate income, and not the corporation itself, the two tax liabilities are completely separate. Defendant therefore asserts that plaintiff has no basis for requesting reimbursement for the tax expenditures of Ms. Malkani. Inspection of the tax codes of the states involved in this case, however, shows that the relationship between an S corporation and its shareholders is an important and intermingled one for state tax purposes. The most useful examples of this relationship exist in the provisions concerning nonresident shareholders. *E.g.*, VA. CODE ANN. § 58.1–332(C) (Michie 1997).

To begin, the states require an S corporation to file a tax return for its corporate income, despite the fact that the corporation will never pay taxes on such income. *E.g.*,

N.C. GEN. STAT. § 105–131.7(a) (1999). With its return, an S corporation in many states must file agreements by its nonresident shareholders that they will pay their share of the income taxes incurred by the corporation. N.C. GEN. STAT. § 105–131.7(c)(i); R.I. GEN. LAWS § 44–11–2(d)(3) (1995); GA. CODE ANN. § 48–7–27(d)(2) (1995). Other states require the corporation to furnish extensive information on each shareholder. S.C. CODE ANN. § 12–8–590(B) (Law.Co-op.Supp.1999). Shareholders must in some cases subject themselves explicitly to personal jurisdiction in the state in order for the S corporation to enjoy pass-through taxation status. N.C. GEN. STAT. § 105–131.7(c)(ii); S.C. CODE ANN. § 12–8–590(F)(3). Some tax codes provide that if an S corporation fails to file such agreements, the S corporation must pay a penalty. GA. CODE ANN. § 48–7–129(a)(3) (1995 & Supp.1999). In some circumstances, certain tax codes require an S corporation to withhold state taxes on behalf of nonresident shareholders, and arrange for reimbursement from these shareholders at a later date. MD. CODE ANN., Tax § 10–102.1(b)(1), (2), (c) (1997); GA. CODE ANN. § 48–7–129(a)(1); S.C. CODE ANN. § 12–8–590(A); IND. CODE § 6–3–4–13 (1996); IND. ADMIN. CODE tit. 45, r. 3.1–1–66 (1992); IND. CODE § 6–8.1–10–2.1(h) (1996) (penalties levied for failure to withhold). Others actually require the corporation to pay the corporate income taxes automatically, or if the shareholder fails to pay. N.C. GEN. STAT. § 105–131.7(c); R.I. GEN. LAWS § 44–11–2(d)(4)(i)–(ii); IND. ADMIN. CODE tit. 45, r. 3.1–1–109 (1992). In general, the state tax codes explain that any corporation which fails to pay its state income taxes, no matter what tax election status it holds, will be subject to penalty and encumbrance on its ability to do business within the state. *See, e.g.*, MD. CODE ANN., Corps. & Ass'ns § 3–503(a)(1),

---

*would cause these government contractors to be taxed at the higher C corporation rates, and therefore the amount the federal government will be required to reimburse will be higher as a result.*

**13.** The parties also dispute whether the general provisions concerning reasonableness, 48 C.F.R. § 31.201–3, allocability, 48 C.F.R. § 31.201–4, and allowability, 48 C.F.R.

§ 31.201–2, require defendant's reimbursement of plaintiff's repayment to Ms. Malkani for her payment of plaintiff's incurred income taxes under the Agreement. Because the more specific Taxes Provision allows for such reimbursement, however, the court need not enter into this discussion in order to rule properly in this case.

(2) (1997); OHIO REV. CODE ANN. § 5733.20 (Anderson 1999).[14] The obligations of an S corporation and its shareholders to pay state income taxes are therefore closely intertwined, and an S corporation is very much required to ensure the payment of its state income taxes. The rigid argument that the tax liabilities of plaintiff and Ms. Malkani are completely separate does not suffice to prohibit reimbursement. Defendant is therefore obligated to reimburse plaintiff for the necessary expenditure plaintiff makes and has made to ensure the payment of its incurred state income taxes.

## Conclusion

For the above-stated reasons, the Taxes Provision, 48 C.F.R. § 31.205–41, allows an S corporation to recover costs associated with the payment of state income taxes incurred on its corporate income. The state tax expenditures incurred by plaintiff on its business activities related to its cost-reimbursement contracts with defendant are therefore reimbursable under the FAR. Plaintiff's motion for summary judgment is granted. Defendant's cross-motion for summary judgment is denied. Pursuant to this holding, defendant's counterclaim for the return of its previously paid state income tax reimbursement to plaintiff is dismissed.

The parties are directed to file a joint stipulation as to the amount of taxes to be reimbursed in accordance with this ruling no later than December 28, 2000. The Clerk is directed to enter judgment in the amount stipulated without further order of the court. Plaintiff's claim for attorney fees and costs is denied without prejudice at this time. Plaintiff may file its brief requesting attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994 & Supp. IV 1998). No costs.

IT IS SO ORDERED.

14. This discussion is not meant to apply these statutory provisions directly to plaintiff's situation; instead, it illustrates an overall unseparated approach to the tax liability of S corporations and their shareholders in the states involved in this case.